IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| SABRINA K. MARSHALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:20-CV-215-M-BR |
| | § | |
| DENIS MCDONOUGH[1], | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO
GRANT IN PART AND DENY IN PART DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Before the Court is Defendant Denis McDonough's ("Defendant's") Motion to Dismiss In

Part Sabrina K. Marshall's ("Plaintiff's") First Amended Complaint Pursuant to Rules 12(b)(1)

and 12(b)(6) (ECF 40), Plaintiff's Response (ECF 42), Defendant's Reply (ECF 43), and

Plaintiff's Sur-Reply (titled Plaintiff's Response to Defendant's Motion for Partial Motion to

Dismiss) (ECF 44). The undersigned recommends the Defendant's Partial Motion to Dismiss be

GRANTED in part and DENIED in part.

## I.   FACTUAL BACKGROUND

Plaintiff is a Registered Nurse ("RN") and is African American. (ECF 37-1 at 1)[2]. She was

employed by the VA Medical Center in Amarillo, Texas, and worked at the Community Living

Center-A ("CLCA") of the VA during the relevant events of this lawsuit, often performing her RN

---

[1] The current Secretary of Veteran's Affairs ("VA"), Denis McDonough, has been substituted for Robert L. Wilkie, former VA Secretary, pursuant to Federal Rule of Civil Procedure 25(d).

[2] All of the facts stated herein are taken from the allegations contained in Plaintiff's First Amended Complaint and its attachments. (ECF 37, 37-1).

duties as the Charge Nurse. (*Id*.). Plaintiff alleges that beginning in October of 2018 she suffered at work from discriminatory remarks and behavior from her coworkers, creating a hostile work environment. (*Id*.). Plaintiff specifically alleges that on June 24, 2019 an employee meeting was conducted by her supervisor and other employees at the meeting engaged in discriminatory conduct, including slander of Plaintiff and throwing a tissue box of Kleenex at Plaintiff. (*Id*.). Plaintiff alleges that her supervisor allowed other employees to victimize Plaintiff because of her physical limitations, disabilities, and race during this meeting. (*Id*.). Plaintiff claims that the June 24, 2019 meeting caused mental anguish and created a hostile work environment for Plaintiff. (*Id*.).

Plaintiff claims her supervisor "bypassed" the guidelines for dealing with complaints of a hostile work environment. (*Id*.). Specifically, Plaintiff alleges that her supervisor disclosed private communications in emails sent by Plaintiff to the coworkers that were harassing her and discriminating against her. (*Id*.). Plaintiff alleges that her subordinates (the other nurses and health care workers she supervised) acted with "insubordination" toward her orders on the basis of her race, and that her supervisor failed to conduct an investigation into these actions or the motive behind these actions. (*Id*.). Plaintiff further alleges that her supervisor engaged in discriminatory or disparate treatment based on her race when he failed to discipline her subordinates for their discriminatory behavior. (*Id*.).

Plaintiff alleges that a Licensed Vocational Nurse ("LVN") that Plaintiff supervised engaged in discriminatory and retaliatory conduct, including false accusations and aggressive behavior, toward Plaintiff after the LVN was suspended from dispensing medications. (*Id*. at 2). Plaintiff reported this behavior, but she claims her supervisor "condoned" the LVN's behavior, rather than taking appropriate remedial action, further subjecting Plaintiff to a hostile work environment. (*Id*.).

Plaintiff filed an Equal Employment Opportunity ("EEO") Complaint concerning the hostile work environment and discrimination. (*Id*.). Plaintiff alleges that her supervisor retaliated against her four days after the filing of the EEO Complaint by "writing her up" for five violations of employee conduct and investigating each of those violations. (*Id*.). Plaintiff claims that the investigations were conducted by an individual with a conflict of interest. (*Id*.). Plaintiff alleges her supervisor's conduct was based on racial discrimination and discrimination for her physical disabilities. (*Id*.).

Plaintiff alleges she suffers from "Chronic Fatigue, Fibromyalgia, and Adrenal Insufficiency" and that her coworkers discriminated against her because of her disabilities. (*Id*.). Plaintiff alleges that an Assistant Nurse Manager, who had a conflict of interest based on familial relationships with individuals involved, informed Plaintiff that she had to continue working with the insubordinate LVN or else be demoted to the position of Certified Nurses Assistant ("CNA"), a more physically demanding job beyond Plaintiff's physical limitations. (*Id*. at 3). Plaintiff asserts that another Charge Nurse had determined that the LVN and Plaintiff did not have to work together. (*Id*.). Plaintiff alleges this decision forced her to remain working in a hostile work environment. (*Id*.).

Plaintiff further alleges that the Assistant Nurse Manager and the LVN conspired against Plaintiff to frame her for a policy violation concerning the proper storage of medication. (*Id*.). On May 31, 2019 another RN determined that Plaintiff left two unopened narcotics unsecured in her medication cart. (*Id*.). Plaintiff claims that other witnesses saw the LVN take the narcotics out of a locked box and place them in Plaintiff's medication cart. (*Id*.). Plaintiff alleges that the medication diversion accusation was substantiated on the basis of false statements from the LVN without a proper investigation. (*Id*.). Plaintiff alleges she was denied due process during the

investigation into these accusations by her supervisor. (*Id*.). Plaintiff alleges her supervisor took the side of the insubordinate LVN without any further investigation. (*Id*. at 4). Plaintiff alleges that the LVN's behavior toward Plaintiff included racial slurs. (*Id*.).

Plaintiff alleges that her supervisor was aware of her physical disabilities and her diagnosis, but failed to accommodate her needs. (*Id*.). Specifically, Plaintiff requested an ergonomic chair and an easier access disability parking space. (*Id*.). Plaintiff alleges she was denied these accommodations. (*Id*.). Plaintiff alleges her pay, work schedule, job title and duties were changed in retaliation for these requests. (*Id*.). Plaintiff alleges that no alternative accommodations were explored or offered. (*Id*.). Plaintiff alleges that her supervisor retaliated against her by contacting the safety officer when Plaintiff used a heating pad and small space heater (in violation of safety policies) to mitigate her cold sensitivity caused by her disabilities. (*Id*.).

Plaintiff claims that she was the only African American RN at the CLCA during her employment there. (*Id*.). She claims her demotion to CNA was the result of racial discrimination, as she was the only RN demoted to such a position. (*Id*.). Further, Plaintiff alleges that she still maintained her Charge Nurse duties and responsibilities but received CNA pay. (*Id*. at 5). Plaintiff alleges that a newly graduated LVN, related by marriage to the Assistant Nurse Manager, was allowed to fill the Charge Nurse position, despite Plaintiff's seniority. (*Id*.).

On February 11, 2019 during Plaintiff's employment, Plaintiff alleges she was diagnosed with Anxiety Induced Amnesia as a result of the hostile work environment. (*Id*.). Plaintiff informed her supervisor of the diagnosis, but the disparate and discriminatory treatment continued without any attempt at correction. (*Id*.).

An investigation into Plaintiff's allegations was initiated by Leanna Tijerina on June 11, 2019. (*Id*.). On June 12, 2019 Plaintiff texted Ms. Tijerina a list of 12 names of individuals who

had discriminated against Plaintiff. (*Id*.). Plaintiff alleges that no witnesses were interviewed, nor any investigation conducted, until over a year later, and that two witnesses later confirmed Plaintiff's allegations. (*Id*.).

Plaintiff alleges the hostile work environment existed from October of 2018 through July of 2020, when her employment ended. (*Id*. at 6). Plaintiff alleges that she had to use over 1,000 hours of leave pursuant to the Family Medical Leave Act ("FMLA") during this time. (*Id*.). Plaintiff further alleges she made repeated complaints of racial discrimination and disability discrimination, which were ignored, during her tenure with the VA. (*Id*.). Toward the end of her employment, Plaintiff was additionally diagnosed with the following conditions as a result of the stress of her employment: Mild Dementia with Behavioral Disturbance (February 2, 2020), Severe Attention Deficit (February 2, 2020), Delirium Superimposed on Dementia (February 2, 2020), Major Depression with Post Traumatic Stress Disorder Dynamics (PTSD) (June 24, 2020), Generalized Anxiety (June 24, 2020), Somatic Symptom Disorder with Predominant Pain (June 24, 2020), Unspecified Neurocognitive Disorder (likely ADHD) (June 24, 2020). (*Id*.). On September 8, 2020 after her employment with the VA ended, Plaintiff was diagnosed with Bipolar Disorder with Psychotic Tendencies. (*Id*.).

Plaintiff alleges that her supervisors sought ways to retaliate against her to make her lose her nursing license, face criminal charges, or be terminated from employment. (*Id*. at 7). Plaintiff further alleges that Defendant showed neglect by allowing her to continue to dispense medications following her February 2, 2020 diagnosis of Dementia and related conditions. (*Id*.). Plaintiff alleges that the investigation into her behavior regarding a Facebook post "threatening a coworker", following her filing of the EEO Complaint, that was conducted on July 22, 2019 was done without a union representative or an attorney for Plaintiff, in violation of her rights. (*Id*.).

Further, Plaintiff claims on August 1, 2019 as a result of continued retaliation for the EEO Complaint, Plaintiff was harassed in the parking lot for parking over the white line in her space; Plaintiff was ticketed for the offense. (*Id*.). Plaintiff alleges this officer was the same person who "interrogated" her regarding the Facebook post. (*Id*.). Plaintiff made a complaint regarding the retaliation, threats, and harassment by the officer, but her complaints were ignored. (*Id*. at 8).

## II.   <u>PROCEDURAL BACKGROUND</u>

Plaintiff filed this lawsuit on September 23, 2020. (ECF 3). Plaintiff moved to amend her claims, but also filed a second lawsuit. *See Marshall v. Wilkie*, 2:21-CV-10-M-BR. The Plaintiff was allowed to amend her claims (ECF 29), and eventually the two cases were consolidated (ECF 48). Plaintiff's allegations in the second suit generally overlap the present suit, with the addition of a factual allegation that Plaintiff was wrongfully suspended without pay in retaliation for her needed disability accommodations and time off under the FMLA; additionally, it is unclear from the dates alleged, but Plaintiff may have received an additional medication diversion charge as a result of retaliation in 2020. *See Marshall v. Wilkie*, 2:21-CV-10-M-BR. (ECF 3 at 7). Plaintiff alleges she was harassed based on her disabilities because of her mental cognition and suffered continued emotional and mental abuse. (*Id*. at 7-9). These new "consolidated" claims are not the subject of the Defendant's Motion to Dismiss in Part. However, Defendant's recent filing indicates a separate Motion for Summary Judgment for failure to exhaust administrative remedies will be filed to addressed these claims, as follows: "Motion for Leave to File an Initial Motion for Summary Judgment," (ECF 55 at 2):

> [Plaintiff's] allegations in [2:21-CV-10-M-BR] address an administrative complaint filed with the VA Equal Employment Opportunity ("EEO") office that is separate and distinct from the EEO complaint at issue in her allegations in [the original lawsuit, 2:20-CV-215]. (*See* [2:21-CV-10-M-BR], Doc. 38 at 1-2 ("[T]he EEO investigated lawsuit 2:20-CV-215. I made an EEO complaint for Lawsuit 2:21-CV-10, but I missed a deadline to submit my formal complaint. So they

refused to investigate my claims.").) As [Plaintiff] failed to file this second EEO complaint within the statutory 15-day limitations period after receiving a notice of right to file a formal complaint, she has failed to properly and timely exhaust her administrative remedies as to her claims in that EEO complaint.

Plaintiff brings the following claims for relief:

1. Failure to accommodate;

2. Rehabilitation Act ("RA") pattern of discrimination;

3. Disparate treatment against a disability;

4. Discrimination in violation of "Section 619.005";

5. Americans with Disabilities Act ("ADA") claims;

6. Retaliation and Reprisal Claims under 42 U.S.C. § 12203;

7. Texas Labor Code § 101.153 violations – insulting and threatening language;

8. Texas Labor Code § 161.134 violations – racial discrimination;

9. Texas Labor Code § 81.004 violations – discrimination generally;

10. Racial Discrimination Claims in violation of 31 U.S.C. § 6711.

(ECF 37-1 at 8). Plaintiff seeks compensatory, general, and special damages, injunctive relief, interest, fees and costs of court, and punitive damages. (*Id*. at 9).

### III.   LEGAL STANDARD

Rule 12(b)(1) provides that a defendant may file a motion to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). In deciding a Rule 12(b)(1) motion to dismiss, the Court may consider:

(1) the complaint alone;

(2) the complaint supplemented by undisputed facts; or

(3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*King v. U.S. Dept. of Veteran's Affairs*, 728 F.3d 410, 413 (5th Cir. 2013) (quoting *Voluntary Purchasing Grps., Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010. Stated differently, the Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the plaintiff cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

Rule 12(b)(6) provides that a defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion to dismiss, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "However, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Ruiz v. Brennan*, 851 F.3d 464, n.5 (5th Cir. 2017) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 555–56, "Factual allegations must be enough to raise a right to relief above the speculative level . . ."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Additionally, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2)'s pleading standard does not require detailed factual allegations, but it demands more than labels and conclusions. *See Iqbal*, 556 U.S. at 678. A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

While a plaintiff is not required to plead a *prima facie* case based on discrimination to survive Rule 12(b)(6), she must set forth allegations that would enable the court to reasonably infer that her employer discriminated against him in violation of Title VII and took the alleged adverse employment action because she is a member of a protected class. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002).

## IV.   <u>ANALYSIS</u>

### A.  Defendant's Motion to Dismiss In Part Plaintiff's Claims under Rule 12(b)(1)

Defendant argues Plaintiff "has failed to demonstrate the Court has jurisdiction over some of her claims…" (ECF 40 at 7). Marshall brings ADA claims and Texas Labor Code claims, in addition to her Title VII and RA claims. (ECF 37-1 at 8). Defendant argues that Title VII and RA

claims are *exclusive* remedies for the violations claimed by Plaintiff in her federal lawsuit, and as

such, this Court has no jurisdiction over her ADA, Texas Labor Code, or any other statutory claims.

(ECF 40 at 7).

> In the case at bar, as in *Preiser* and the other cases cited above, the established
> principle leads unerringly to the conclusion that [section] 717 of the Civil Rights
> Act of 1964, as amended, provides the *exclusive judicial remedy* for claims of
> discrimination in federal employment.

*Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) (citing *Preiser v. Rodriguez*, 411 U.S. 475,

489-490 (1973)) (emphasis added). Plaintiff seeks damages based on racial and disability

discrimination in her federal employment. (ECF 37-1 at 1-9). Thus, Title VII is the sole remedy

for Plaintiff to recover based on her racial discrimination claims. *See id*. at 835.

Further, Plaintiff's disability claims also have one exclusive remedy: the RA. *See Dark v.*

*Potter*, 293 Fed. Appx 254, 258 (5th Cir. 2008) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir.

2007) ("The Rehabilitation Act, not the Americans with Disabilities Act (ADA), constitutes the

exclusive remedy for a federal employee alleging disability-based discrimination." (citations

omitted))). Thus, the RA is the appropriate statutory authority by which Plaintiff must pursue her

disability claims. As such, this Court must dismiss Plaintiff's state law and ADA claims.

### B.   Defendant's Motion to Dismiss In Part Plaintiff's Claims under Rule 12(b)(6)

Defendant requests the Court dismiss some of Plaintiff's claims under Rule 12(b)(6),

arguing she has failed to adequately plead a claim for relief as outlined for each claim *infra*. (*See*

ECF 40 at 12-28).

#### i.   Plaintiff's Disparate Treatment Claims

Defendant argues that the allegations contained in Plaintiff's First Amended Complaint

concerning disparate treatment based on racial discrimination and disability discrimination fail to

state a claim for relief. (*Id*. at 12). However, Defendant acknowledges Plaintiff has stated a claim

for disparate treatment under Title VII in regard to her performance of additional duties on the basis of race. (*Id*.).

### a. Plaintiff's Title VII Disparate Treatment in the Investigation of Her Complaint(s) (Racial Discrimination)

Plaintiff has pleaded a disparate treatment, not a disparate impact claim. *See Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006) (explaining the difference between disparate treatment and disparate impact discrimination). Title VII creates a federal cause of action for two largely separate theories of discrimination: disparate treatment and disparate impact. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). Disparate treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. *Id.* In such disparate treatment cases, proof and finding of discriminatory motive is required. *Id*.

Disparate impact discrimination, on the other hand, addresses employment practices or policies that are facially neutral in their treatment of these protected groups, but, in fact, have a disproportionately adverse effect on such a protected group. *Hebert v. Monsanto*, 682 F.2d 1111, 1116 (5th Cir. 1982). In disparate impact cases, proof or finding of discriminatory motive is not required. *Id*. Here, Plaintiff does not challenge particular policies held or applied by the VA during her tenure; rather, she challenges her treatment by her coworkers and supervisors, based on racial discrimination. Thus, Plaintiff brings disparate treatment claims.

Disparate treatment based on race can be the basis for a Title VII claim. *See* 42 U.S.C. §§ 2000e *et seq*.; *see also Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). "In such disparate-treatment cases, proof and finding of discriminatory motive is required." *Pacheco*, 448 F.3d at 787; *see also Ang v. Procter & Gamble Co*., 932 F.2d 540, 548–49 (6th Cir. 1991) ("[T]he aim [of

11

a court that is assessing an alleged Title VII violation] is not to review bad business decisions, or question the soundness of an employer's judgment.").

A plaintiff need only plausibly allege facts going to the ultimate elements of a claim to survive a motion to dismiss. Thus, the Court must first determine the elements of the claim. The *McDonnell Douglas* framework requires a plaintiff making a disparate treatment claim to establish a *prima facie* case by showing: (1) that he or she is a member of a protected class; (2) that he or she was qualified for the position at issue; (3) that he or she was subject to an adverse employment action; and (4) that other similarly situated employees who were not members of the same protected class as the plaintiff were treated more favorably than the plaintiff. *Bryan v. McKinsey & Co., Inc*., 375 F.3d 358, 360–61 (5th Cir. 2004).

In 2002, the Supreme Court unanimously stated that the *McDonnell Douglas* framework "is an evidentiary standard [as opposed to] a pleading requirement" and that "it is not appropriate [under a notice pleading system] to require a plaintiff to plead facts establishing a *prima facie* case" under *McDonnell Douglas* in order to survive a Rule 12(b)(6) motion to dismiss. *Swierkiewicz*, 534 U.S. at 510–11. The Supreme Court's subsequent articulation of the "plausibility" standard in *Twombly* and *Iqbal* has complicated the holding in *Swierkiewicz*, but *Swierkiewicz* has never been explicitly overruled, and *Twombly* even cited it with seeming approval. *See Twombly*, 550 U.S. at 569–70. In the Fifth Circuit, a court that is evaluating a Rule 12(b)(6) motion in a Title VII case can thread the needle between *Swierkiewicz* and the "plausibility" standard by "consider[ing] the *McDonnell Douglas* framework," as long as the court does not enforce the framework as "a rigid pleading requirement." *Puente v. Ridge*, 324 Fed. Appx. 423, 427–28 (5th Cir. 2009). Ultimately, "no plaintiff is exempt from her obligation to allege facts sufficient to state all the elements of her claim[,]" *Id*. at 428 (quotation marks omitted), so elements

of the *McDonnell Douglas* framework can be used to determine whether the plaintiff has plausibly alleged that the defendant "took the adverse employment action against [the] plaintiff *because of* her protected status[,]" which is "the ultimate question in a Title VII disparate treatment claim[.]" *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (internal quotation marks omitted; emphasis in original) (affirming dismissal of disparate treatment claim under Rule 12(b)(6) because the plaintiff's complaint "did not allege any facts, direct or circumstantial, that would suggest [the defendant's] actions were based on [the plaintiff's] race or national origin or that [the defendant] treated similarly situated employees of other races or national origin more favorably").

Defendant claims that Plaintiff has failed to adequately allege either direct or circumstantial evidence of discrimination with regard to her disparate treatment claim for the Defendant's failure to investigate Plaintiff's EEO complaint and other complaints made to her supervisor that Plaintiff filed or sent concerning her discriminatory treatment. (ECF 40 at 12-15). The Court disagrees. The Court notes that Defendant acknowledges that Plaintiff stated a disparate treatment claim regarding her allegations that she was forced to perform additional tasks based on her race. (*Id*. at 12). The essential elements of that disparate treatment claim are the same as the disparate treatment claim for failure to investigate her allegations of discrimination. Thus, Defendant essentially acknowledges that Plaintiff pleaded facts sufficient to establish adverse employment action, less favorable treatment, and discriminatory motive for this claim. There is no articulated dispute that Plaintiff's race is a protected class and no specific argument that Plaintiff was not qualified, as an RN, to perform the duties of an RN. Essentially, Defendant argues that the allegations in the First Amended Complaint are sufficient to support the elements of adverse employment action, less favorable treatment, and discriminatory motive for one disparate treatment claim (additional tasks and duties) but insufficient for another (failure to investigate). Defendant's briefing does not

distinguish why one disparate treatment claim would survive a Rule 12(b)(6) motion and another, based on the same Amended Complaint, would fail to allege the same necessary facts of adverse employment actions, less favorable treatment and discriminatory motive.

First, Defendant argues that Plaintiff has failed to allege facts supporting the element of an "adverse employment action." (ECF 40 at 14, 16). An adverse employment action consists of "ultimate employment decisions" such as hiring, granting leave, discharging, promoting, demoting and compensating. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281-82 (5th Cir. 2004). Defendant argues that the alleged failure to investigate Plaintiff's discrimination claims did not constitute an "adverse employment action." However, looking solely to the allegations and not a higher evidentiary burden, Plaintiff has asserted that the failure to investigate her claims resulted in her demotion from RN to CNA. (ECF 37-1 at 3). Specifically, when Plaintiff's allegations are construed liberally as required, Plaintiff asserts that the racially motivated actions of an LVN led to medication diversion allegations, a factor contributing to her demotion; this is exactly what Plaintiff alleges contributed to her other disparate treatment claim – that she had to perform additional tasks and duties. (*Id.* at 3-5). Combined with the fact that Plaintiff alleges that the failure to investigate her claims resulted in her "false" conviction for medication diversion (*Id.* at 3), a demotion *was* the result of the failure to investigate, per the allegations in the First Amended Complaint. (*Id.*).

Second, Defendant argues that Plaintiff failed to allege facts supporting the element that she was "treated less favorably than others similarly situated outside of [her] protected class." (ECF 40 at 14). Plaintiff must identify an employee under "nearly identical" circumstances who did not have adverse employment action taken against her. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2017). Plaintiff asserts she was the only African

American RN working at the CLCA during her employment and that she was the only RN demoted to CNA. (ECF 37-1 at 3-4). Thus, it can be inferred that other individuals, outside of her protected class (race) were treated more favorably in that they were not assigned the additional physical duties associated with a CNA. Again, Plaintiff alleges that this treatment was the result of Defendant's failure to investigate her claims of discrimination.

Finally, Defendant argues that Plaintiff provides no more than "her own speculative conclusions" that the actions of Defendant in failing to investigate her complaints were motivated by race. (ECF 40 at 15). This is the closest call in determining whether Plaintiff has stated a claim. A failure to provide factual allegations in support of a discriminatory motive results in a legally deficient claim under Title VII. *See Wyre v. Bollinger Shipyards, Inc*., No. Civ. A. 14-1759, 2015 WL 222327, at *5-6 (E.D. La. Jan. 14, 2015). A district court errs by requiring "a showing of each prong of the *prima facie* test for disparate treatment at the pleading stage[.]" *Raj v. La. State Univ*., 714 F.3d 322, 331 (5th Cir. 2013). But the Fifth Circuit has also explained that, although plaintiffs do not "have to submit evidence to establish a prima facie case of discrimination at this stage, [they must] plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [their] case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (emphasis added) (explaining a plaintiff must allege "facts, [either] direct or circumstantial, that would suggest [the employer's] actions were based on [the plaintiff's] race or national origin or that [the employer] treated similarly situated employees of other races or national origin more favorably"); *see also Pacheco*, 448 F.3d at 787 (a "discriminatory motive is required" for disparate treatment claims).

The Fifth Circuit notes that it is error to require a plaintiff to plead something more than the "ultimate elements" of a claim. *Chhim*, 836 F.3d at 470. A court thus inappropriately heightens

the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss. *See Swierkiewicz*, 534 U.S. at 512, (explaining "the precise requirements of a *prima facie* case can vary depending on the context and were 'never intended to be rigid mechanized, or ritualistic' " (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978))); *see also Twombly*, 550 U.S. at 548 (citing *Swierkiewicz*, 534 U.S. at 508) (explaining that the *Twombly* pleading standard "[does] not require[ ] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"). Such factual inquiries are better suited to a summary judgment analysis than a Rule 12(b)(6) analysis. *See, e.g., Thompson v. City of Waco*, 764 F.3d 500, 506 (5th Cir. 2014) (explaining "that further assessment of [appellant's] claim is fact-intensive and better suited for the summary-judgment or trial stage").

To establish disparate treatment so as to present circumstantial proof of a discriminatory motive on Defendant's part, Plaintiff must demonstrate that a "similarly situated" employee outside Plaintiff's protected class was treated differently. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405-06 (5th Cir. 2005). Plaintiff alleges discrimination based on race in that the investigation into medication diversion charges credited the testimony of an LVN of a different race rather than Plaintiff's own testimony. Plaintiff cannot establish discriminatory motive through these allegations alone according to this standard. However, Plaintiff has alleged that the LVN disparaged her based on race (through the use of racial slurs and by insubordination) prior to the LVN's actions in planting evidence in Plaintiff's cart, leading to medication diversion allegations.

Here, Plaintiff has alleged a discriminatory motive. The facts she has alleged indicating such motive include the use of racial slurs by coworkers (specifically the LVN) and the failure by supervisors to correct the behavior when she reported it – thereby "condoning" such racially

motivated behavior. (ECF 37-1 at 2-7). Plaintiff does not cite specific instances in her allegations of what statements were made by coworkers, nor does she tie these statements to particular employment conditions, including her demotion, except to say they created a hostile work environment. Plaintiff does allege that her treatment during a June 2019 employee meeting was disparate and racially motivated, as evidenced by the behavior of the participants. (ECF 37-1 at 3-4). Notably, most of the allegations in Plaintiff's Amended Complaint relate to a "snowball" effect of continued treatment that led to her demotion (e.g. the LVN's racial slurs, her behavior in "planting" medication in Plaintiff's cart, the medication diversion charge, Plaintiff's response and Defendant's failure to investigate Plaintiff's claims and Plaintiff's subsequent demotion). Thus, looking at the allegations as a whole, Plaintiff's claim for disparate treatment for failure to investigate are sufficient to survive a Rule 12(b)(6) analysis, and the Court will not subject Plaintiff's claims to an analysis best suited to the summary judgment stage of proceedings.

### b.  Plaintiff's RA Claims (Disability Discrimination)

The RA states that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be ... subjected to discrimination under any program or activity receiving Federal financial assistance ... or activity conducted by the United States Postal Service." 29 U.S.C. § 794(d). Relief under the RA requires Plaintiff to prove (1) she is an "individual with a disability"; (2) who is "otherwise qualified"; (3) who worked for a "program or activity receiving Federal financial assistance"; and (4) who was discriminated against "solely by reason of her disability." *Hileman v. City of Dallas, Tex.*, 115 F.3d 352, 353 (5th Cir. 1997). The RA defines an individual with a disability as a person who has a physical or mental impairment that "substantially limits one or more of such person's major life activities." *Id*. (quoting 29 U.S.C. § 706(8)(B)).

Again here, while Plaintiff need not plead a *prima facie* case, she must provide grounds demonstrating an entitlement to relief that are more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 509–10 (2002); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). She must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. As the Supreme Court noted:

> Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id*. at 555 n.3. *Pro se* complaints are liberally construed, but the Court need not accept entirely conclusory allegations. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

Defendant argues that Plaintiff has failed to allege disparate treatment based on a disability because although Plaintiff did allege an "adverse employment action," she failed to allege a "causal connection between her demotion and her disability." (ECF 40 at 17-19). The Court agrees. In order to constitute an adverse employment action in a disability case, the disability discrimination must "play a role in the employer's decision making process and have a determinative influence on the outcome." *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008).

Plaintiff alleges that her supervisor allowed other employees to victimize Plaintiff because of her physical limitations, disabilities, and race during an employment meeting in June of 2019. (ECF 37-1 at 1). Plaintiff alleges she suffers from "Chronic Fatigue, Fibromyalgia, and Adrenal Insufficiency" and that her coworkers discriminated against her because of her disabilities. (*Id*. at 1-2). Plaintiff alleges that an Assistant Nurse Manager, who had a conflict of interest based on familial relationships with individuals involved, informed Plaintiff that she had to continue working with an insubordinate LVN or else be demoted to the position of Certified Nurse's

Assistant ("CNA"), a more physically demanding job beyond Plaintiff's physical limitations. (*Id.* at 3). Plaintiff alleges that she had to use over 1,000 hours of leave pursuant to the FMLA during this time. (*Id.* at 6). Plaintiff further alleges she made repeated complaints of racial discrimination and disability discrimination, which were ignored, during her tenure with the VA. (*Id.*). Plaintiff clearly alleges that no other RN was forced to perform the duties of a CNA. (*Id.* at 3-4).

However, the Court agrees that Plaintiff has failed to allege any causal connection between her demotion and her disability; rather, Plaintiff links her demotion to racial discrimination. As such, Plaintiff has not stated a disparate treatment claim under the RA.

### ii.    **Plaintiff's Retaliation Claims**

A plaintiff must establish a *prima facie* case by showing the three elements of retaliation under the RA: (1) the employee engaged in a protected activity, such as filing an EEO Complaint; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. *See Calderon v. Potter*, 113 Fed. Appx. 586, 592 (5th Cir. 2004). The definition for adverse employment action is broader for retaliation claims than for discrimination claims. *See Brown v. Liberty Mut. Grp., Inc.*, 616 Fed. Appx. 654, 658 (5th Cir. 2015).

Defendant argues that Plaintiff "plead[ed] no facts to support either the second or third elements of a retaliation claim." (ECF 40 at 22). Plaintiff alleges that her supervisor retaliated against her four days after the filing of the EEO Complaint by "writing her up" for five violations of employee conduct and investigating each of those violations. (ECF 37-1 at 2). Plaintiff claims that the investigations were conducted by an individual with a conflict of interest. (*Id.*). Plaintiff alleges her supervisor's conduct was based on racial discrimination and discrimination for her physical disabilities. (*Id.*). Plaintiff additionally asserts that the medication diversion allegations

were a part of the retaliation. (*Id.*). Thus, Plaintiff has pleaded sufficient facts to support the second and third prong of a retaliation claim.

An adverse employment action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Here, Plaintiff was subjected to "write ups," presumably deficient performance allegations, and investigations, which could very likely result in termination. The Court is unpersuaded by Defendant's argument that such actions would not dissuade an individual from pursuing an EEO Complaint. These "write ups" could also be used against Plaintiff to support her demotion to CNA. Plaintiff was actually demoted, per her allegations, and if such constitutes an adverse employment action (as acknowledged by Defendant regarding Plaintiff's RA claims above) for purposes of her RA discrimination claim, then such constitutes adverse employment action for retaliation purposes.

Next, Defendant argues that Plaintiff failed to cite a causal connection between the adverse employment action and the protected activity. Defendant argues Plaintiff "has not provided any dates to indicate that any of these alleged adverse employment actions occurred *after* she filed her EEO Complaints." (ECF 40 at 24). Earlier in his briefing, Defendant acknowledged that Plaintiff alleged these "write ups" occurred four days after the EEO Complaint was filed. (ECF 40 at 22). Defendant states Plaintiff has failed to state a *prima facie* case, but a *prima facie* case is not necessary to survive a motion to dismiss under Rule 12(b)(6). Defendant in essence tries to convert the Court's analysis to that required for a motion for summary judgment. Although it is not clear from the pleadings if the medication diversion allegations arose prior to Plaintiff's EEO Complaint, she does appear to allege the allegations were a part of the retaliation. Thus, Plaintiff's claim for retaliation under the RA should not be dismissed.

### iii.   Plaintiff's Harassment and Hostile Work Environment Claims (Title VII)

To state a claim for harassment based on a hostile work environment theory, a plaintiff must allege facts sufficient to state all the elements of the claim: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on a protected characteristic; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer know or should have known of the harassment in question and failed to take prompt remedial action. *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

Defendant argues that two instances comprise Plaintiff's claim for a hostile work environment: (1) the June 24, 2019 meeting and her treatment during that meeting; and (2) the failure by the VA to intervene in her conflicts with coworkers (this failure itself comprising multiple issues Plaintiff experienced with coworkers). (ECF 40 at 27). Although Defendant focuses on "hostility" toward Plaintiff based on her disabilities, the Plaintiff alleges that both disability and race played a role in this environment and her treatment, and both are "protected groups." Taking Plaintiff's allegations as a whole (racial slurs by an LVN, daily insubordination based on racial bias, being "framed" for medication diversion, demotion to physically demanding CNA duties, censure for use of heating pad or space heater, etc.) the Court determines that Plaintiff has stated a claim that this harassment was the result of her race and physical disabilities and has stated sufficient facts to allege conduct "that a reasonable person would find it hostile and abusive, and subjectively offensive…" *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993).

### C.  Unchallenged Claims Not Subject to Defendant's Partial Motion to Dismiss

Finally, Defendant acknowledges that the following claims are not subject to its Motion to Dismiss in Part, and these claims will remain in this lawsuit: RA claim for failure to accommodate

her disabilities (e.g. providing an ergonomic chair, closer disability parking space, and/or allowing temperature regulating devices like space heaters or heating pads); Title VII disparate treatment claim for racial discrimination as the only African American RN required to work as a CNA. (ECF 40 at 8). Defendant, as outlined *supra*, challenges all of Plaintiff's remaining RA and Title VII claims, but these two claims will remain in the suit as unchallenged by the Defendant.

## V.   <u>RECOMMENDATION</u>

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States Chief District Judge that Defendant's Motion to Dismiss In Part (ECF 40) be (1) GRANTED in part pursuant to Rule 12(b)(1) with respect to Plaintiff's ADA, Texas Labor Code and other statutory claims; GRANTED in part pursuant to Rule 12(b)(6) with respect to Plaintiff's RA claims for disparate treatment based on disabilities for failure to allege a causal connection; and (2) DENIED with respect to Plaintiff's Title VII disparate treatment for failure to investigate claims; DENIED with respect to Plaintiff's RA retaliation claims; and DENIED with respect to Plaintiff's Harassment and Hostile Work Environment claims. Plaintiff's RA disability accommodation claim and Title VII racial discrimination in job duties and the requirement to perform additional tasks (RN working as a CNA) claim were not subject to the Motion to Dismiss and remain in this suit.

This District generally allows plaintiffs at least one opportunity to cure pleading deficiencies if such deficiencies may be cured through amendment. *See Wilson v. Deutsche Bank Tr. Co. Americas as Tr. for Residential Accredit Loans, Inc.*, No. 3:18-CV-0854-D, 2019 WL 175078, at *8 (N.D. Tex. Jan. 10, 2019). The undersigned acknowledges that Plaintiff has already amended her Complaint (*See* ECF 37) and had a second case consolidated into this case (ECF 48), and thus has had an opportunity to cure any pleading deficiencies. However, as this is the first time

the Court has analyzed Plaintiff's pleadings, the undersigned recommends Plaintiff's RA claims for disparate treatment based on disabilities, dismissed pursuant to Rule 12(b)(6), be <u>DISMISSED without prejudice to refiling</u>. Plaintiff's claims dismissed pursuant to Rule 12(b)(1) should be dismissed <u>without prejudice</u>, but should not be refiled in federal court, as the jurisdictional deficiencies cannot be cured by repleading.

## VI.    <u>INSTRUCTIONS FOR SERVICE</u>

The United States District Clerk is directed to send a copy of this Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED July 15, 2021.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), as recognized in *ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).