IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| SABRINA K. MARSHALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:20-CV-215-M-BR |
| | § | 2:21-CV-010-M-BR (consolidated) |
| DENIS MCDONOUGH, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO
GRANT DEFENDANT'S FIRST MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Denis McDonough's ("Defendant's") First Motion for Summary Judgment (ECF 60)[1] with brief in support (ECF 61) and appendix in support (ECF 62), Plaintiff's Response/"Motion to Oppose Dismissal" (ECF 63) with additional attachments (ECF 64), Defendant's Reply (ECF 72), and Plaintiff's Sur-Reply (titled Plaintiff's Reply) (ECF 73). The undersigned recommends the Defendant's First Motion for Summary Judgment be GRANTED.

**I.   FACTUAL BACKGROUND**

Much of the factual background of this employment discrimination and retaliation case is outlined in the Court's prior Findings, Conclusions and Recommendation on Defendant's Motion to Dismiss. (ECF 57). Additional facts related to Plaintiff's consolidated case, 2:21-CV-10, are discussed herein.

---

[1] The Court granted Defendant's motion to file an initial Motion for Summary Judgment related solely to whether Plaintiff's claims in consolidated case number 2:21-CV-010-M are barred from federal review for failure to exhaust her administrative remedies.

Plaintiff alleges that harassment, discrimination and retaliation persisted at the Veteran's Affairs ("VA") hospital where she continued to work following her first Equal Employment Opportunity ("EEO") Complaint, the subject of the initial lawsuit. The new EEO claims range from June 1, 2020 through the end of September of 2020. Specifically, Plaintiff asserts that:

> On June 1, 2020, coworkers Miller and Jones assigned two Licensed Vocational Nurses ("LVNs") to Plaintiff's unit, and allowed to Registered Nurses ("RNs") to transfer to another unit, thus making Plaintiff's assigned unit short-staffed on RNs. (ECF 62 at 10, 27).
>
> Additionally, on June 1, 2020, Plaintiff alleges that she was assaulted by LVN Kyle and coworkers Miller and Tijerina did nothing to prevent or correct Kyle's behavior. (*Id*. at 10). Further, Miller and Tijerina allowed Kyle to be insubordinate to Plaintiff. (*Id*.).
>
> On June 2, 2020, Jones, Miller and Tijerina disregarded Plaintiff's complaints of her physical inabilities by scheduling her to be the charge nurse for the entire facility. (*Id.* at 9, 23). Plaintiff informed these individuals of her deteriorating health and physical limitations in advance of these assignments. (*Id*. at 9).
>
> On June 14, 2020, coworker Miller informed Plaintiff that her leave balances were being altered by "someone." (*Id*. at 8, 24). Plaintiff alleges that her supervisors at the VA were aware that someone wrongfully altered her leave balances when these supervisors took later action against her. (*Id*.).
>
> On June 15, 2020, coworker Tijerina suspended Plaintiff for three days. (*Id*. at 10, 23). Plaintiff alleges that she was wrongly accused of failing to appear for a shift without notice (the stated reason for the suspension), when in fact the shift(s) in question were covered on FMLA leave, already granted to Plaintiff, and all of her alleged "failures to appear" for shifts should have automatically been converted to LWOP. (*Id*.). Plaintiff alleges that this was done in reprisal for her previously filed EEO Complaint. (*Id*. at 23).
>
> On July 9, 2020, Plaintiff suffered a work-related injury, to-wit: PTSD as a result of the harassment and emotional abuse sustained at work. (*Id*. at 26-27, 29). Plaintiff alleges coworkers Miller and Tijerina failed to properly advise her of her rights for worker's compensation, failed to properly report the injury as required, and conspired with Human Resources to cover-up the report made by Plaintiff. (*Id*.).
>
> On July 10, 2020, Plaintiff was informed that any submitted leave would transition to LWOP under FMLA. (*Id*. at 25). Because Plaintiff had submitted over 250 hours of sick leave, this was not actually the case, and this misinformation led to Plaintiff's eventual termination. (*Id*.).

On July 20, 2020, Plaintiff went to her place of employment to specifically request her leave balances in person, after numerous emails for these balances were ignored. (*Id*. at 8, 10, 29). While there, coworkers Miller and Tijerina stood behind Plaintiff in a disturbing fashion during the time she was there. (*Id*. at 29). Plaintiff alleges she was unable to obtain her leave balances because the appearance of these two coworkers caused her to have a panic attack. (*Id*.).

On July 30, 2020, coworker Miller emailed Plaintiff that, starting August 5, 2020, Plaintiff would begin working as a Certified Nurse's Assistant ("CNA") instead of performing RN duties. (*Id*. at 9, 22-23). Plaintiff alleges this "demotion" was the second such demotion to CNA (the first in October of 2018) and was done with the intention to aggravate her disabilities. (*Id*. at 23).

On July 30, 2020, coworkers Jones and Tijerina refused to provided Plaintiff with her Family Medical Leave Act ("FMLA") and Leave Without Pay ("LWOP") balances and provide notice of any time Plaintiff was alleged to have failed to appear for a shift without notice. (*Id*. at 8, 24). On August 1, 2020, coworker Miller emailed Plaintiff her current leave balances without providing her FMLA balances. (*Id*.).

On August 1, 2020, coworker Miller scheduled Plaintiff to work on the same unit that had previously caused Plaintiff work-related trauma. (*Id*. at 9).

On August 31, 2020, another traumatic event occurred at work, and Miller and Tijerina failed to inform Plaintiff of her legal options as required by policy. (*Id*. at 10).

On September 5, 2020, Plaintiff reported a verbal assault by LVN Kyle to coworkers Miller and Tijerina. (*Id*. at 10, 27). Plaintiff contacted the VA police officers to report the incident herself after Miller and Tijerina failed to take any action. (*Id*. at 27). A proper investigation into the incident was never performed. (*Id*.).

On September 9, 2020, coworker Tijerina and Human Resources employee Jennifer Smith failed to properly document Plaintiff's claims of discrimination. (*Id*. at 28).

On September 12, 2020, Plaintiff alleges coworker Miller allowed LVN Kyle and CNA Aceves to defame her character. (*Id*. at 9, 28). Plaintiff alleges individuals were spreading rumors that she was on extended leave for stealing medications and making medication errors on the job. (*Id*.). No proper investigation was conducted concerning the incident. (*Id*.).

On September 13-14, 2020, another coworker, Jessica King, defamed Plaintiff by making continuing allegations that Plaintiff committed medication diversions (failure to properly secure narcotic medications). (*Id*. at 9-10, 26). Coworkers Miller and Tijerina failed to take any action to correct the false allegations. (*Id*.).

3

> On September 15, 2020, coworker Tijerina failed to inform Plaintiff (or her spouse) of her rights to submit a worker's compensation claim through Human Resources. (*Id*. at 28).
>
> On September 16, 2020, coworkers Miller, Tijerina, Smith, and Cox conspired together to deny Plaintiff her due process rights in relation to allegations of medication diversion. (*Id*. at 9, 25). Plaintiff alleges that this conspiracy was an attempt to show other employees the consequences of pursuing legal action and were in reprisal for Plaintiff's filing of her first EEO Complaint. (*Id.*).
>
> On September 18, 2020, coworkers Miller and Tijerina accused her of not showing up for work and failing to provide notice in advance of shift for three shifts in August of 2020, when Plaintiff had not been released to come back to work. (*Id*. at 8, 29).
>
> On September 18, 2020, the investigation into LVN Kyle's verbal abuse produced no results, causing Plaintiff to suffer a mental breakdown. (*Id*. at 28).
>
> On September 20, 2020, coworkers Miller, Tijerina and Smith conspired to cover up Plaintiff's complaints of discrimination. (*Id*. at 28).

All of Plaintiff's claims above are contained in her second EEO Complaint.

## II.  PROCEDURAL BACKGROUND

The procedural facts are undisputed. Plaintiff contacted an EEO counselor regarding her additional claims of discrimination, retaliation, and reprisal on July 21, 2020. (*Id.* at 8). On September 25, 2020, the informal counseling concluded, and Plaintiff was informed of the right to file a formal complaint. (*Id*. at 11). Plaintiff was informed of the 15-day deadline to file this complaint. (*Id.*). The EEO formal complaint form sent to Plaintiff, with her right-to-file notice, specifically stated that the deadline "will not be extended due to your need to seek [the EEO counselor's] assistance in completing" the complaint form. (*Id.* at 13-14).

The evidence reflects that Plaintiff received the notice on October 30, 2020. (*Id.* at 18, 32). The deadline for submission of her complaint was November 16, 2020, the Monday following the 15-day period. (*Id.* at 49). Plaintiff filed her second EEO Complaint concerning these claims on November 18, 2020, two days after the deadline. (*Id*. at 39-40). When contacted about the delay,

4

Plaintiff stated by email that she missed the deadline because of her "chronic mental disabilities." (*Id*. at 38). Plaintiff has submitted evidence of her disability diagnosis and her ongoing health challenges with her Response, to support these claims. (ECF 64).

### III.     LEGAL STANDARD

Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 248. To determine whether there are any genuine issues of material fact, the Court must first ascertain the factual issues that are material under the applicable substantive law. *See id*.; *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076, n.14 (5th Cir. 1994). Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Lavespere*, 910 F.2d at 178; *Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986) (internal quotation omitted)); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). However, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16, n.7 (5th Cir. 1992). The Court should not weigh the evidence and determine the truth of the matter in determining whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine dispute for trial exists. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

"If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick Cty. Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little*, 37 F.3d at 1075). On the other hand, if the movant meets its burden to show an absence of evidence supporting the nonmovant's case, then the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 324). If the nonmovant cannot provide some evidence to support its claim, summary judgment is appropriate. Fed. R. Civ. P. 56(e); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).

## IV.   ANALYSIS

As a precondition to filing suit in federal court, Title VII specifically requires a federal employee claiming discrimination to exhaust her administrative remedies. *See Brown v. General Servs. Admin.*, 425 U.S. 820, 832 (1976) ("Initially, the complainant must seek relief in the agency that has allegedly discriminated against him."). The complainant also must file her complaint in a timely manner. *See Tolbert v. United States*, 916 F.2d 245, 247 (5th Cir. 1990); *see also Webster v. Chertoff*, No. 3:06-CV-438-M, 2008 WL 4791584, at *3 (N.D. Tex. Oct. 27, 2008) (failing to "file a formal EEO complaint within the required period will bar subsequent review of the claim in a federal court absent waiver, estoppel or equitable tolling."). A failure to comply with the

6

established time limits in the administrative process is deemed a failure to exhaust administrative remedies. *Brown v. General Servs. Admin.*, 425 U.S. 820, 824 (1976).

Defendant argues that the 15-day filing rule is "not a jurisdictional prerequisite" and equitable tolling can apply to the deadline, and cites to *Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010); 29 C.F.R. § 1614.604(c) ("The time limits in this part are subject to waiver, estoppel and equitable tolling."). (ECF 61 at 14). The undersigned recognizes a split in the Fifth Circuit as to whether some or all pre-suit Title VII requirements are jurisdictional or not. *See Carter v. H2R Rest. Holdings, LLC*, No. 3:16-CV-1554-N-BN, 2017 WL 4174805, at *7 (N.D. Tex. Aug. 1, 2017), *report and recommendation adopted*, No. 3:16-CV-1554-N-BN, 2017 WL 4174800 (N.D. Tex. Sept. 19, 2017) (citing *Baker v. McHugh*, 672 Fed. Appx. 357, 360 (5th Cir. Dec. 2, 2016) ("We note that Fifth Circuit case law contains some conflicting authority on the question of whether exhaustion of EEOC administrative remedies is jurisdictional in a Title VII case"); *Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006) ("There is a disagreement in this circuit on whether a Title-VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction.")). The undersigned agrees with the reasoning in *Carter* that equitable tolling should be considered in such cases when considering barring suit for the failure to exhaust administrative remedies. However, in this instance, the agency has regulations that allow for consideration of equitable tolling of the deadline, as follows:

> The agency may waive the applicable time limit if a complainant can show extenuating circumstances prevented compliance with it or that he/she was otherwise unaware of it.

*See* 29 CFR § 1614.604(c). Defendant provided Plaintiff with the opportunity to make arguments regarding her mental health status and the need for equitable tolling of the deadline at the time the

untimely complaint was filed; the agency ultimately determined that equitable tolling did not apply to Plaintiff's missed deadline. (ECF 62 at 50).

A court will reverse an agency's interpretation of its regulations only if the decision is arbitrary or capricious. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 42 (1983) ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."); *Wilson v. United States Dep't of Agric*., 991 F.2d 1211, 1215 (5th Cir. 1993) (looking "at the agency's decision to determine if it was reached in an arbitrary or capricious manner"), *cert. denied*, 510 U.S. 1192 (1994). "A decision is arbitrary or capricious only when it is 'so implausible that it could not be ascribed to a difference in view or the product of agency expertise.' " *Wilson*, 991 F.2d at 1215 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). "The agency decision need only have a rational basis, and it does not have to be a decision which the court would have made." *Id*.

Defendant argues that Plaintiff's EEO Complaint was filed, in this instance, two days late, and such claim is undisputed by Plaintiff. Plaintiff does assert that she "misunderstood" the filing deadline, but the summary judgment evidence makes clear that the notice of her right to file a formal complaint specifically articulated that the 15-day deadline could not be extended by Plaintiff's interactions with the EEO counselor. (ECF 62 at 13-14). Additionally, Plaintiff has previously been through the EEOC process and was familiar with the timelines. Plaintiff is not entitled to equitable tolling based on her "misunderstanding."

Plaintiff also argues she is entitled to equitable tolling based on her mental health situation at the time she was preparing and submitting her EEO Complaint. (ECF 63; ECF 73). The agency determined that Plaintiff was also not entitled to tolling for that reason, as follows:

> Documentation reflects that upon completion of the informal counseling process, the EEO counselor issued the NRTF, and formal complaint forms to you, via UPS,

on October 28, 2020. UPS tracking records reflect that on October 30, 2020, the NRTF and formal complaint packet was delivered to you. You had 15 calendar days from October 30, 2020, in which to file a timely formal complaint. The 15th calendar day from October 30, 2020, would have been Saturday, November 14, 2020. It should be noted, because November 14, 2020, fell on a Saturday, regulation [sic] require that the agency extend the time frame for timely filing to the next business day, Monday, November 16, 2020. You exceeded the 15 calendar day-time frame for timely filing a formal complaint by three[2] calendar days, because you filed your formal complaint on Wednesday, November 18, 2020.

On January 4, 2021, this office emailed you a request for information asking that you provide a response as to why you filed your formal complaint three calendar days beyond the 15 calendar day time requirement. On January 4, 2021, you responded to the request for information. Specifically, you stated that you were confused concerning the time frame for filing your formal complaint and you made reference to having a cognitive disability. However, there is no evidence that you were totally incapacitated from performing work related task [sic] or filing your timely EEO complaint. You even indicated in your response that during the time frame you had to timely file your formal complaint, you were working on clarifying your counselor report and framing the claims on your formal complaint.

Additionally, in your response, you made reference to your interactions with two of this office's staff members, Angela Phillips-Cooper, your assigned EEO Counselor, and Nicolas Escobedo, EEO Counselor Team Lead. Specifically, you claimed you became confused of the time frame for filing your formal complaint because Ms. Phillips-Cooper made errors in the counselor report, and that you were correcting information in the EEO counselor report. However, in your Notice of Right to File a Formal Complaint memorandum that you received on October 30, 2020, you were clearly put on notice you had 15 calendar days to timely file your formal complaint. Additionally, you claim that for the 1st time, on November 18, 2020, Mr. Escobedo, notified you that you only had 15 calendar days from the date of your receipt of the Notice of Right to File a Discrimination Complaint memorandum, to timely file your complaint. However, in Mr. Escobedo's November 18, 2020, email to you, he made reference to a telephone call that he had with you on November 5, 2020. Specifically, Mr. Escobedo stated to you, "I spoke with you on November 5, 2020, as well regarding your concerns about the framing/wording of your claim (s) and the 15 calendar day timeframe… It does not stop or change the 15 calendar day timeframe to file a formal complaint from the date you received the NRTF on October 30, 2020."

Furthermore, the agency's database concerning EEO complaints reflects that you filed one previous EEO complaint on September 23, 2019, Case No.2003-0504-2019104276. With that said, you had actual knowledge of the EEO process, specifically, the time frame for timely filing a formal EEO complaint.

---

[2] The math is incorrect in this notice, and should note that Plaintiff missed the deadline by two, not three, days.

9

>The Commission has consistently held that a complainant who has engaged in prior EEO activity is deemed aware of the time frames required for filing complaints in the EEO procedure. Based on his/her prior complaint, we find Complainant was aware of the 15-day limitation period.
>
>It should also be pointed out that the cover sheet for the NRTF, paragraph 4, states *"if you decide to file a formal complaint, you have 15 calendar days from receipt of this notice in which to do so. Please do not mail the VA Form 4939 to [the counselor]; your formal complaint must be mailed to one of the addresses listed on the first page of the attached Notice of Right to File a Discrimination Complaint."*
>
>Moreover, the NRTF states in the last sentence of paragraph 1, *"If you decide to file a formal complaint, you must do so WITHIN FIFTEEN (15) CALENDAR DAYS OF YOUR RECEIPT OF THIS NOTICE."* Also, the last sentence of paragraph 2, states *"Please note that the 15 calendar day timeframe will not be extended due to your need to seek assistance in completing this form."* You were clearly placed on notice concerning the 15-day calendar day time requirement for filing a formal complaint.
>
>There is not sufficient evidence to waive or toll the filing period because the instructions in the NRTF placed you on notice that you had 15-calendar days to file your formal complaint. Your explanation concerning your untimely filing of the formal complaint does not provide ample justification to waive or toll the 15-day time requirement. Additionally, there is no compelling evidence that extenuating circumstances prevented you from filing your complaint in a timely manner. Therefore, your complaint is DISMISSED in its entirety under the authority as stated in 29 CFR 1614.107 (a)(2), for failing to comply with applicable time limits.

(ECF 62 at 49-51) (emphasis in original).

The agency's reference to "total incapacitation" is supported by the case law in making a determination for equitable tolling based on mental health issues. Equitable tolling of statutes of limitations and exhaustion requirements may be warranted upon showing that the plaintiff *was non compos mentis*. *See Speiser v. U.S. Dep't of Health and Human Servs.*, 670 F. Supp. 380, 384 (D.D.C. 1986) (*Non compos mentis* is a Latin phrase commonly translated as 'not master of one's mind.' BLACK'S LAW DICTIONARY, 1151 (9th ed. 2009)). To be *non compos mentis*, one must be "incapable of handling her own affairs or unable to function in society." *Smith-Haynie v. District of Columbia*, [74 EPD ¶ 45,564] 155 F.3d 575, 579 (D.C. Cir. 1998)). Impaired judgment

or general claims of mental illness is not enough to justify equitable relief from procedural requirements. *Speiser*, 670 F. Supp. at 385 ("While plaintiff clearly suffers from a legitimate mental illness, she has failed to demonstrate that it disabled her to the requisite degree."). An individual must show that she was "unable to engage in rational thought and deliberate decision making sufficient to pursue her claim alone or through counsel." *Id.* at 580 (quoting *Nunnally v. MacCausland*, [61 EPD ¶ 42,327] 996 F.2d 1, 5 (1st Cir. 1993) (per curiam)); *see also Perry v. U.S. Dep't of State*, 669 F. Supp. 2d. 60, 65-66 (D.D.C. 2009) ("Equitable tolling is only appropriate on *non compos mentis* grounds when a plaintiff 'is **completely** incapable of handling his affairs and legal rights." (internal citations and quotations omitted)). To make this determination, courts have often focused on whether the plaintiff was "ever adjudged incompetent, signed a power of attorney, had a guardian or caretaker appointed, or otherwise took measures to let someone else handle [plaintiff's] affairs …" *Speiser*, 670 F. Supp. at 385.

The agency's determination that Plaintiff was not totally incapacitated by mental illness during the time frame for filing a complaint is not arbitrary or capricious. Thus, Plaintiff's second EEO Complaint was not subject to equitable tolling. As such, Plaintiff's claims contained in the second EEO Complaint must be dismissed because Plaintiff failed to properly exhaust her administrative remedies.

## V.     RECOMMENDATION

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States Chief District Judge that Defendant's First Motion for Summary Judgment (ECF 60) be GRANTED.

## VI.    INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED October 1, 2021.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), as recognized in *ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).