IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

SABRINA K. MARSHALL,              §
                                 §
        Plaintiff,               §
                                 §
v.                               §    2:20-CV-215-M-BR
                                 §    2:21-CV-010-M-BR (consolidated)
DENIS MCDONOUGH,                 §
                                 §
        Defendant.               §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO
GRANT DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Denis McDonough's Second Motion for Summary Judgment (ECF 80)[1] with brief (ECF 81) and appendix in support (ECF 82), Plaintiff's Response/"Motion to Oppose" (ECF 83) with brief (ECF 84), Defendant's Reply (ECF 85), Plaintiff's Motion for Leave (ECF 86), Plaintiff's Surreply (ECF 87), and Defendant's Supplemental Briefing (ECF 91). The undersigned recommends the Defendant's Second Motion for Summary Judgment be GRANTED.

## I.    BACKGROUND

This is an employment discrimination lawsuit, brought by *pro se* Plaintiff Sabrina Marshall ("Marshall" or "Plaintiff," herein) against her former employer, the U.S. Department of Veterans Affairs ("Secretary," or "Defendant," herein). Marshall, an African American woman who claims to suffer from fibromyalgia, adrenal insufficiency and chronic fatigue, alleges that the Secretary subjected her to "frequent ongoing acts of discrimination, harassment, reprisal, and being forced

---

[1] The Court previously granted the Secretary's motion to file an initial Motion for Summary Judgment related solely to whether Marshall's claims in consolidated case number 2:21-CV-010-M were barred from federal review for failure to exhaust her administrative remedies. (ECF 55, 59).

to work in a hostile work environment." (ECF 37 at 4; ECF 37-1 at 4; ECF 81). Marshall claims that the Secretary "condoned [r]acial [d]iscrimination, intimidation, bullying, reprisal, harassment, hostile work environment, and in many cases used reckless disregard for [Marshall]'s physical and mental well-being." (ECF 37 at 4). Marshall further complains that the Secretary failed to investigate her claims, refused to provide reasonable accommodations for her disabilities, allowed her to be "exposed to defamation of character and slander," and permitted her to be "set up for medication diversion" accusations by co-workers as retaliation. (*Id*.).

At all times relevant to this suit, Marshall worked as a Registered Nurse ("RN") in the Community Living Center-A ("CLCA") unit of the Veteran Affairs Medical Center of Amarillo, Texas ("VA"), also known as the Welcome Home Unit ("WHU"). (ECF 37-1 at 1; ECF 81). Marshall's supervisors were Assistant Nurse Manager April Jones and Nurse Manager Lisa Miller. (ECF 82 at 6–7). Marshall alleges that a Licensed Vocational Nurse whom Marshall supervised ("the LVN") engaged in discriminatory and retaliatory conduct toward Marshall, including false accusations and aggressive behavior, after the LVN was suspended from dispensing medications. (ECF 37-1 at 1). Marshall reported this behavior, but claims her supervisor "condoned" the LVN's behavior, rather than taking appropriate remedial action, further subjecting Marshall to a hostile work environment. (*Id*. at 1–2). Marshall alleges the hostile work environment existed from October of 2018 through July of 2020, when her employment ended. (*Id*. at 6).

Marshall claims that she was the only African American RN at the CLCA during her employment there. (*Id*. at 4–5). Marshall alleges that the LVN's behavior toward Marshall included racial slurs. (*Id*. at 4). Marshall further alleges she made repeated complaints of racial discrimination and disability discrimination, which were ignored, during her tenure with the VA. (*Id.*). Marshall claims her demotion to Certified Nurses Assistant ("CNA") in late-2018 was the

result of racial discrimination, as she was the only RN demoted to such a position. (*Id.*). Further, Marshall alleges that she still maintained her Charge Nurse duties and responsibilities but received CNA pay. (*Id.* at 5).

Marshall alleges that the LVN conspired against Marshall to frame her for a policy violation concerning the proper storage of tramadol medication (sometimes referred to as "medication diversion"). (*Id.* at 3–4). On May 31, 2019 another RN reported that Marshall left two unopened narcotics unsecured in her medication cart. (*Id.*). Marshall claims that other witnesses saw the LVN take the narcotics out of a locked box on Marshall's medication cart, thereby rendering them unsecured. (*Id.*). Marshall alleges her supervisor took the side of the insubordinate LVN without any further investigation. (*Id.*).

On June 24, 2019 an employee meeting was held to address communication issues between the employees. (*Id.* at 1). At this meeting, Marshall provided the VA management team with green folders containing emails and other statements prepared by Marshall (generally referred to as the "green folders"), which were intended to summarize her workplace complaints. (*Id.* at 5; ECF 82 at 96–97). Marshall alleges that she was "persecute[d]" by her co-workers at the meeting, including remarks being made about her character and being struck on the hand by a Kleenex box. (ECF 37-1 at 1). Marshall contacted an Equal Employment Opportunity ("EEO") counselor immediately after the meeting ended. (ECF 82 at 10, 124, 134).

In June 2019, Marshall requested an ergonomic chair and an easier access disability parking space. (ECF 37-1 at 4; ECF 82 at 149). Marshall alleges she was denied these accommodations. (ECF 37-1 at 4). The VA reasonable accommodations coordinator offered to temporarily assign Marshall to another unit that was closer to the parking lot until they could meet to establish a permanent solution. (ECF 82 at 53, 55–56, 230; ECF 82-1 at, 48–49, 226, 237–41).

Marshall alleges that this accommodation was unacceptable, and in response, she refused to attend a meeting with the reasonable accommodations coordinator and withdrew her request. (*Id.*).

Marshall alleges that, in July 2019, her supervisor retaliated against her by contacting the VA safety officer when Marshall used a heating pad and small space heater (in violation of safety policies) to mitigate her cold sensitivity caused by her disabilities. (*Id.*). Also in July 2019, a VA police officer contacted Marshall regarding an allegedly threatening Facebook post that she posted. (*Id.* at 7). On August 1, 2019, Marshall was ticketed for parking over the white line of her parking spot in the VA parking lot. (*Id.*). Marshall alleges that she was threatened and harassed by the same VA police officer on both occasions, and that the Secretary did not act on her complaints about the officer. (*Id.* at 7–8). Marshall alleges that each of these interactions were taken in retaliation for her EEO Complaint.[2] (*Id.*).

Marshall filed a formal EEO complaint on September 23, 2019, complaining of harassment, disparate treatment on the basis of disability, reprisal for contacting the EEO, and failure to provide reasonable accommodations. (ECF 82 at 149). Marshall alleges in the Amended Complaint that her supervisors sought ways to retaliate against her to make her lose her nursing license, face criminal charges, or be terminated from employment. (*Id.* at 7). Marshall further alleges that her supervisor retaliated against her four days after she initiated contact with the EEO counselor by "writing her up" for five violations of employee conduct and then investigating each of those violations. (ECF 37-1 at 2). Marshall stated in her deposition that she initially received five proposed reprimands on either June 24, 2019 or June 28, 2019, which she had an opportunity

---

[2] While Marshall alleges that these actions were taken "[i]n retaliation to filing an EEO Complaint," (ECF 37-1 at 7), the undersigned construes such allegations to relate to her initiation of contact with the EEO counselor on June 24, 2019, rather than the filing of her formal EEO complaint, which did not occur until September 23, 2019—after the alleged incidents took place.

to discuss with her supervisor, and that formal reprimands were issued on three of the five matters on September 11, 2019. (ECF 82 at 24–26).

## II.    PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit on September 23, 2020. (ECF 3). Plaintiff later filed a second suit regarding her second November 18, 2020 EEO complaint. (*See Marshall v. Wilkie*, 2:21-CV-10-M-BR). The second suit was consolidated into this action (ECF 48), and all of the claims raised therein were later dismissed. (ECF 76, 77). The Court also previously dismissed Marshall's claims for disparate treatment on the basis of her asserted disability, as well as alleged violations of the Americans with Disabilities Act, the Texas Labor Code, and other statutory claims. (ECF 57, 74). Marshall's remaining claims allege: (1) disparate treatment on the basis of race; (2) harassment and a hostile work environment in violation of Title VII and the Rehabilitation Act; (3) failure to provide reasonable accommodations; and (4) retaliation. (*See generally* ECF 37, 37-1).

The Secretary now seeks summary judgment on Marshall's four remaining claims. (ECF 80). Marshall's Response to the Secretary's Second Motion for Summary Judgment was untimely filed on April 27, 2022. (ECF 83–84). After Marshall's request, the Court accepted the late-filed Response. (*See* ECF 86, 88). No evidence was cited in or attached to Marshall's Response (*see* ECF 83–84), as noted in the Secretary's Reply (ECF 85). Without leave of Court, Marshall filed a Surreply (ECF 87) and included for the first time an Appendix in opposition to the Motion (ECF 87-1). At the Court's request, the Secretary filed Supplemental Briefing addressing Marshall's Surreply, which raised objections to the consideration of Marshall's Surreply. (ECF 90, 91).

## III.    LEGAL STANDARD

A motion for summary judgment permits a court to resolve a lawsuit without conducting a trial if the court determines the pleadings, responses to discovery, and the record reveal (1) there

is no genuine issue as to any material facts, and (2) the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *see also Crawford-El v. Britton*, 523 U.S. 574, 600, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998) ("[S]ummary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial.").

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The nonmovant is required to "submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause[s] of action." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The nonmoving party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324–25. Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little v. Liquid Air Corp*., 37 F.3d 1069, 1076 (5th Cir. 1994).

A genuine issue of material fact exists if the evidence is such that a reasonable trier of fact could return a verdict for the nonmovant. *Anderson*, 477 U.S. at 248. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when ... both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court "do[es] not, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075. Disputed fact issues that are "irrelevant and

6

unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Anderson*, 477 U.S. at 248.

The nonmovant must also "articulate the precise manner in which the submitted or identified evidence supports his or her claim." *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). The court has no duty to search the record for material fact issues. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16, n.7 (5th Cir. 1992). "Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

Conclusory allegations, speculation, unsubstantiated assertions and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075. The nonmoving party's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (internal quotations and citations omitted); *see also Duffie v. U.S.*, 600 F.3d 362, 371 (5th Cir. 2010) ("[T]he nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings."). Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (internal citations omitted).

These rules apply equally to *pro se* litigants. Although *pro se* pleadings must be viewed liberally, such plaintiffs are still required to submit competent summary judgment evidence. *Davis v. Hernandez*, 798 F.3d 290, 293 (5th Cir. 2015). In particular, the Court has no discretion to

consider unsupported assertions and evidentiary materials that fall short of Rule 56's requirements. *See Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (holding that *pro se* plaintiff's unsworn response failed to satisfy Rule 56 and may not be considered, but that the court should have provided an opportunity to remedy the defects). This rule limits the Court's discretion to assist an untrained litigant in two significant ways. First, the Court must limit its review to evidence that would be admissible at trial—hearsay is not admissible. *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 124–25 (5th Cir. 2011). Second, a *pro se* litigant may not rely on her own unsworn statements appearing in her response. *Gordon*, 622 F.2d at 123 ("Although *pro se* litigants are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, we have never allowed such litigants to oppose summary judgments by the use of unsworn materials.").

## IV.    ANALYSIS

The Secretary now seeks summary judgment on Marshall's four remaining claims on the following grounds:

1. Marshall failed to properly exhaust her administrative remedies as to her claims of racial discrimination;

2. Marshall's harassment and hostile work environment claims fail because she has not shown that the actions at issue were severe or pervasive, or that the agency knew or should have known of any harassment and failed to take prompt remedial action;

3. Marshall cannot show that the agency failed to provide her with reasonable accommodations;

4. Marshall's retaliation claim fails at each step of the three-part burden-shifting analysis introduced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

The undersigned considered the parties' pleadings and evidence in the record and recommends the motion should be GRANTED on all claims.

**A. The undersigned considered Marshall's Surreply.**

While Marshall's Response included extensive argument and assertions, the Response was entirely devoid of citation to the record in support of her assertions. (*See generally* ECF 83–84); Fed. R. Civ. P. 56(e); N.D. Tex. Civ. R. 56.4. By her Surreply, Marshall seeks to "show how she does in fact meet her burden at the summary judgment stage to present actual evidence showing a genuine issue for trial," and cites to the newly attached appendix. (ECF 87 at 1; ECF 87-1). Marshall's Surreply and Appendix, however, were filed without leave of Court in violation of Local Rule 56.7. N.D. Tex. Civ. R. 56.7. Surreplies are "highly disfavored and are permitted only in exceptional or extraordinary circumstances." *Highmark, Inc. v. Allcare Health Management Systems, Inc.*, No. 4:03-CV-1384-Y (N.D. Tex. Sept. 29, 2015) (internal quotations omitted). Whether to allow filing a surreply is within the sound discretion of the district court, subject to review for abuse of discretion. *Embry v. Hibbard Inshore, L.L.C.*, 803 F. App'x 746, 749 (5th Cir. 2020).

Given Marshall's *pro se* status, the undersigned has considered all competent evidence, including the evidence submitted in Marshall's Surreply. Marshall's Surreply contained exhibits identified as J–AD. (*See* ECF 87-1). While a title page was submitted for Exhibit AC, no document was included. (*Id*. at 75). The Secretary objected to Marshall's Exhibit P (ECF 87-1 at 16–19) as not produced during discovery and Exhibits V (*Id*. at 46–50) and W (*Id*. at 50–58) to the extent that they constitute expert testimony of healthcare providers who were not designated as experts. (ECF 91 at 5). Having considered the Secretary's objections to Exhibits P, V, and W, the undersigned finds that these objections should be sustained. The undersigned also finds that Exhibits V and W, to the extent that they are admissible, do not establish a genuine question of material fact at issue in this case.

While the late-filed exhibits were considered, the undersigned finds they are not competent summary judgment evidence. For example, several of the documents contain inadmissible hearsay, which was not considered. (*See*, *e.g.*, ECF 87-1 at 38). The undersigned notes that while Exhibits J, N, U, and AB contain legal terms such as "discrimination" and "hostile work environment," these are no more than "conclusory allegations, speculation, unsubstantiated assertions and legalistic arguments" that do not establish a genuine question of material fact as to any claims in this case. *See TIG Ins. Co.*, 276 F.3d at 759; *Little*, 37 F.3d at 1075; (ECF 87-1 at 1–3, 11–13, 32–45, 71–74). Exhibits O and AD do not establish a genuine question of material fact, as discussed herein. (*See generally* ECF 87-1 at 14–15, 76–80).

Similarly, the Secretary raises a generalized objection that "comments from [Marshall's] co-workers are not sworn statements, and none demonstrate" material facts at issue in this case. (*Id*. at 9, n.4). A review of Marshall's appendix indicates that Exhibits Q, R, S, T, X, Y, Z, and AA all fall within this general objection. (ECF 87-1 at 20–31, 59–70). A court has "ample discretion to call upon the parties to remedy the defects, by submitting supplemental affidavits or otherwise." *Gordon*, 622 F.2d at 123. Nevertheless, the undersigned finds that, even if remediated, these co-worker statements do not address material facts at issue in this case and instead are disputed facts that are "irrelevant and unnecessary." *Anderson*, 477 U.S. at 248.

Finally, Exhibits K, L, M, and N are offered in support of arguments that are not reached, and as such, are not discussed herein. (ECF 87-1 at 4–13).

After conducting a review of all the competent summary judgment evidence, the undersigned finds that Marshall failed to not only satisfy her burden to produce any evidence, either direct or circumstantial, but also to exhaust her administrative remedies as to her racial

discrimination claims. Further, Marshall failed to establish a genuine issue of material fact regarding her disability discrimination, retaliation, or failure to accommodate claims.

### B. Marshall failed to exhaust administrative remedies as to Title VII disparate treatment and hostile work environment claims asserting racial discrimination.

Marshall alleges that she was subject to disparate treatment on the basis of race by the Secretary's failure to investigate her complaints against her co-workers and by demoting her to a "CNA." (ECF 37-1 at 1–2, 4–5). Marshall also alleges hostile work environment on the basis of race, asserting that the Secretary was aware of and failed to address personal slurs and other verbal conduct relating to her race. (See ECF 37-1 at 4–5). The Secretary contends that Marshall failed to exhaust administrative remedies for her claims of racial discrimination by failing to raise such claims in the EEO process or to timely notify an EEO counselor. (ECF 81 at 36–41). Marshall does not present any facts or arguments addressing exhaustion of administrative remedies. (*See generally* ECF 83–84, 87).

Title VII of the Civil Rights Act makes it "an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As a precondition to filing suit in federal court, Title VII specifically requires a federal employee claiming discrimination to exhaust her administrative remedies. *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006) (racial discrimination); *Sanchez v. United States Postal Serv.*, 430 F. App'x 368, 371 (5th Cir. 2011) (hostile work environment). A federal employee who believes that she has been discriminated against on the basis of race, color, religion, sex, national origin, age, or handicap must contact an EEO counselor within forty-five days of the matter alleged to be discriminatory. 29 C.F.R. § 1614.105(a)(1). The exhaustion of administrative remedies by filing a charge of discrimination with the EEO division of the federal

employee's agency is a precondition to seeking judicial relief. *Pacheco*, 448 F.3d at 787–88; *see also Baker v. McHugh*, 672 F. App'x 357, 360 (5th Cir. 2016).[3] Absent a showing of justification for failure to follow exhaustion procedures, a Title VII claim must be dismissed if the exhaustion defense is adequately raised. *Stroy v. Gibson*, 896 F.3d 693, 698 (5th Cir. 2018); *Davis v. Fort Bend Cty.*, 893 F.3d 300, 303 (5th Cir. 2018).

The primary purpose of the exhaustion requirement is to "trigger the investigatory and conciliatory procedures of the EEOC, in an attempt to achieve non-judicial resolution of employment discrimination claims." *Pacheco*, 448 F.3d at 788-89. The exhaustion requirement, therefore, is only met for claims "within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." S*ee Walton-Lentz v. Innophos*, 476 F. App'x 566, 569 (5th Cir. 2012) (plaintiff failed to exhaust administrative remedies with respect to hostile work environment claim because she only alleged retaliation in her charge). Even where an express legal claim was not raised in the EEOC charge, a claimant may still have put the agency on notice where the facts alleged form the basis of her subsequent legal claims. *Harris v. Parker College of Chiropractic*, 286 F.3d 790, 795 (5th Cir.2002); *see also Sanchez v. Standard Brands Inc.*, 431 F.2d 455, 462 (5th Cir. 1970) ("[T]he crucial element of a charge of discrimination is the factual statement contained therein.").[4]

---

[3] The undersigned previously discussed a split in the Fifth Circuit as to whether some or all pre-suit Title VII requirements are jurisdictional or not, and the role of equitable tolling. (ECF 76 at 7). However, Marshall has not raised equitable estoppel in this claim and further analysis is not warranted. (*See generally* ECF 83–84, 87, 87-1); *Ford-Evans v. United Space All., LLC*, 329 F. App'x 519, 526 (5th Cir. 2009) (declining to apply equitable estoppel where plaintiff failed to allege the necessary elements for equitable estoppel at any stage of the litigation).

[4] *See, e.g., Young v. City of Houston, Tex.*, 906 F.2d 177, 179 (5th Cir. 1990) (employee precluded from suing for sex discrimination where charge only alleged race and age discrimination); *Pacheco*, 448 F.3d at 788–89 (noting that although plaintiff's failure to check the box for age or national original discrimination

No evidence has been presented that Marshall ever consulted an EEO counselor regarding racial discrimination or hostile work environment based on race, let alone within the forty-five days required by 29 C.F.R. § 1614.105(a)(1). (*See generally* ECF 83–84, 87, 87-1). The evidence presented by the Secretary establishes that Marshall first contacted an EEO counselor in June 2019, more than six months after Marshall alleges the racial discrimination occurred. (ECF 82 at 124–27). The initial EEO report prepared in June of 2019 and EEO complaint in September 2019 allege only disability-based discrimination, harassment, and retaliation. (ECF 82 at 8, 124–27). Further, the Report of Investigation prepared by the EEO Investigator and the Final Agency Decision relate solely to complaints of disability discrimination and retaliation. (*Id*. at 149; ECF 82-1 at 60). The factual descriptions at each step of the EEO process do not indicate any facts or circumstances to put the Secretary on notice of alleged racial discrimination. (*See generally* ECF 82 at 8, 109–97; ECF 82-1 at 58–76).

Lastly, Marshall testified that she was unable to recall informing the EEO of potential racial discrimination. (ECF 82 at 9).

Marshall wholly failed to address administrative exhaustion in her Response. (*See generally* ECF 83–84). In her Surreply, Marshall responds that she "believes it was because of her ethnicity that she was routinely being denied procedural due process to even have her allegations of discrimination and harassment be investigated." Marshall states she "always felt she was held to a different standard" than similarly situated Caucasian RNs, specifically identifying her alleged demotion in late-2018 when she worked as a CNA for approximately six weeks. (ECF 87 at 9). Marshall's burden is not satisfied by conclusory allegations or unsubstantiated assertions, such as

---

was not fatal, dismissal was appropriate because plaintiff failed to provide any information in his factual statement regarding such claims).

the subjective beliefs proffered by Marshall. *See Willis*, 61 F.3d and 315. Nor do these statements establish a question of fact regarding whether Marshall exhausted administrative remedies regarding her claim of racial discrimination.

The only evidence Marshall relies on in response are two signed statements from co-workers Anita Townsend and Janice Adams. (ECF 87 at 9; ECF 87-1 at 65–66, 69–70). While each statement is titled as "Affidavit," neither statement is sworn under penalty of perjury; therefore, they are not competent summary judgment evidence. (*Id*.); Fed. R. Civ. P. 56(c)(4). Even if such statements were sworn, each statement merely supports Marshall's allegation that she was "the only Rn (*sic*) doing patient care" between approximately October and December of 2018. (ECF 87-1 at 65–66, 69–70). The statements do not establish a question of fact regarding whether Marshall exhausted administrative remedies regarding her claim of racial discrimination.

The undersigned finds that there is no genuine issue of material fact that Marshall failed to exhaust her administrative remedies regarding racial discrimination, including failing to timely report such claims to an EEO counselor. For this reason, the undersigned recommends that the Secretary is entitled to summary judgment on Marshall's Title VII disparate treatment and hostile work environment claims asserting racial discrimination.

## C. Marshall failed to demonstrate a hostile work environment under the Rehabilitation Act.

To survive summary judgment, Marshall must establish a material fact issue exists on each of the elements of a hostile work environment claim. To establish a prima facie case of a general hostile work environment claim, including claims under Title VII and the ADA, a plaintiff must show: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race, disability, or other protected status; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the

employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Collier v. Dall. Cnty. Hosp. Dist.*, 827 F. App'x 373, 376 (5th Cir. 2020) (per curiam); *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 445 (5th Cir. 2017). To establish a hostile work environment claim under the Rehabilitation Act, however, requires that the discrimination be "solely by reason of her or his disability." *Soledad v. United States Dep't of Treasury*, 304 F.3d 500, 506 n.8 (5th Cir. 2002) (*citing* 29 USCS § 794).

A work environment is considered hostile when it is "objectively and subjectively offensive" such that "a reasonable person would find [it] hostile or abusive" and the victim herself "perceive[d] [it] to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998). In determining whether a work environment is objectively hostile, courts consider "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Collier*, 827 F. App'x at 377 (quoting *Hernandez*, 670 F.3d at 651); *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 236 (5th Cir. 2001). For workplace abuse to rise to the level of an actionable offense, the disability-based harassment must be sufficiently pervasive or severe to alter the terms and conditions of employment. *Flowers*, 247 F.3d at 236; *see also Faragher*, 524 U.S. at 788 (1998). The alleged discriminatory conduct "must be more than rude or offensive comments or teasing." *Collier*, 827 F. App'x at 377 (alterations incorporated) (citation omitted). "It is a simple fact that in the workplace, some workers will not get along with one another, and this Court will not elevate a few harsh words or 'cold shouldering' to the level of actionable offense." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003) (internal citations omitted).

Marshall's allegations of hostile work environment include claims under both Title VII and the Rehabilitation Act. (ECF 37-1). Marshall "felt that the hostile work environment was based on her physical disabilities and were racially motivated" when she overheard two co-workers say that "they didn't have to take orders from that 'black bitch.'" (ECF 84 at 7). To the extent that this instance and any other claims by Marshall are based on racial discrimination, these claims are barred by her failure to exhaust her administrative remedies, as discussed above.[5] *Sanchez*, 430 F. App'x at 371. The remainder of Marshall's hostile work environment allegations, including those which do not specifically identify on what protected class they are based, will, therefore, be evaluated only on the basis of her disability. Neither party contests that Marshall belongs to a protected class. (*See generally* ECF 81, 83–85, 87).

Marshall alleges that her co-workers made "taunting discriminatory remarks" regarding her disabilities. (ECF 37-1 at 1–2). In her deposition, Marshall testified that the disability discrimination was "rampant and ongoing," including comments from certain co-workers that Marshall merely pretended to be sick and complained of devices she used to alleviate pain. (ECF 82 at 89–103). As part of the information Marshall provided at the June 24, 2019 employee meeting, she submitted a list of items she considered to be disability discrimination, including co-

---

[5] The undersigned notes that the "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" is insufficient to establish harassment within the meaning of Title VII. M*eritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405 (1986). Isolated incidents and comments, unless extremely serious, will not support a hostile work environment claim. *Butler v. MBNA Tech., Inc*., 111 Fed. Appx. 230, 234-35 (5th Cir. 2004); *see, e.g.*, *McCray v. DPC Indus.*, 942 F. Supp. 288, 292 (E.D. Tex. 1996) (evidence that foreman had called plaintiff, a black man, "black yankee," and "son," and that plaintiff had been called a "n*****" by a co-worker was insufficient to support a claim for hostile work environment).

workers' comments that she is "just faking" her illness and that she "use[s] her health as a crutch." (ECF 87-1 at 38).[6]

Having reviewed the record and all competent summary judgment evidence, the undersigned finds that such alleged comments are not of sufficient frequency, of a threatening or humiliating nature, or reasonably interfering with Marshall's work performance to establish a hostile work environment, as a matter of law. *Collier*, 827 F. App'x at 377. While such instances may constitute "rude or offensive comments," they are not legally actionable. *See id*.

While Marshall complains extensively of insubordination and other conduct by co-workers, Marshall has not established a question of material fact that this conduct was based on her disability, let alone solely on her disability. Rather, the record supports that the alleged insubordination and other aggrieved conduct was based on work-related disagreements and personality conflicts. (*See, e.g.*, ECF 82-1 at 100 ("All of this is disrespectful and rude… I refuse to work with a staff member who will constantly be second guessing my knowledge, experience, and judgment which in some cases has continued to cause a hostile work environment."); ECF 87-1 at 4 ("She has retaliated against me for trying to point out that certain things that she has done is against LTC reculations" (*sic*))). Marshall also relies on statements from co-workers, which describe the work environment as "toxic," "hostile," and "uncomfortable." (ECF 87-1 at 20–31, 59–70). However, none of these statements establish a question of fact that Marshall was treated differently based on her disability, rather than general hostility between all of the employees, regardless of protected status. (*See, e.g.,* ECF 87-1 at 20 ("General disrespect for authority"); *id*. at 30 ("Certain people do not agree … on how to care for resident"); *id*. at 62 ("They… bully and control the entire unit making it hard to work together.")).

---

[6] While this document contains extensive hearsay, the undersigned only considered the admissible portions.

Likewise, Marshall has not established a question of material fact that her remaining allegations, including management's refusal to reassign one of the offending co-workers to another unit, the alleged medication diversions, and Marshall's interactions with VA police officers were harassment. (*See generally* ECF 84 at 20–23; ECF 87 at 1). Marshall has not presented a genuine question of material fact that these incidents were of such frequency or severity to establish an objectively hostile work environment, or sufficiently pervasive or severe to alter the terms and conditions of her employment. (*Id*.). Further, Marshall has presented no evidence that these incidents were related to her disability, let alone solely to her disability, and the record does not support such an inference. (*Id*.).

Because Marshall does not establish a genuine question of material fact as to the second, third, or fourth elements of a hostile work environment claim, the undersigned does not reach any allegations regarding the fifth element,[7] and recommends that the Secretary is entitled to summary judgment on this claim.

### D. Marshall failed to establish a retaliation claim.

To establish a prima facie case of retaliation, the plaintiff must establish: (1) she participated in a protected activity, (2) her employer took an adverse employment action against her, and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007). In the context of a retaliation claim, an adverse employment action is an action that is "materially adverse" that "might have dissuaded a reasonable worker from making or supporting a charge of

---

[7] While Marshall provides extensive examples of the Secretary's allegedly insufficient response to her complaints, such exhibits are rife with admissibility issues. Because the undersigned's analysis does not reach this element, such evidence is not discussed herein.

discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (citation and internal quotation marks omitted).

In order to "screen out trivial conduct," the court applies an objectively reasonable standard in determining whether a materially adverse employment action occurred. *Id*. at 69. "[P]etty slights, minor annoyances, and simple lack of good manners" do not constitute an adverse employment action. *Burlington*, 548 U.S. at 68; *see also Browning v. S.W. Research Inst*., 288 F. App'x 170, 179–80 (5th Cir. 2008) (finding that alleged "badgering, harassing, and humiliating" behavior, verbal abuse, and threats to employment were not retaliatory adverse employment actions). An employment action that "does not affect job duties, compensation or benefits" is not an adverse employment action. *Butler v. MBNA Tech., Inc*., 111 F. App'x 230, 235 (5th Cir. 2004); *see also King v. Louisiana*, 294 Fed. Appx. 77, 85–86 (5th Cir. 2008) (stating that even in the light most favorable to the plaintiff, allegations of unpleasant work meetings, verbal reprimands, and unfair treatment are not adverse employment actions in the retaliation context).

If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nonretaliatory reason for its employment action. *McCoy*, 492 F.3d at 557 (applying the *McDonnell Douglas* framework). If a lawful reason is produced, the burden shifts back to the plaintiff to demonstrate the proffered reason is a pretext for the real retaliatory purpose. *See id.* In order to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013). In order to demonstrate pretext, the plaintiff must show "both that the reason was false, *and* that discrimination was the real reason." *Walton v. Bisco Indus.*, 119 F.3d 368, 370 (5th Cir. 1997) (emphasis in original).

Marshall alleges that the Secretary retaliated against her for engaging in EEO complaints in the following circumstances: "subjecting her to five pending write-ups" only four days after she first spoke with an EEO counselor in June 2019, receipt of an email reminder of the prohibition of heating devices received in August 2019, and accusations of morphine diversion in January 2020. (*See* ECF 37-1 at 2, 4–9; ECF 81 at 51; ECF 82-1 at 46).[8]  The undersigned finds that Marshall has failed to demonstrate any of these incidents constitute retaliation as prohibited by federal law.

Marshall also alleges that the Secretary "retaliated against [Marshall] for exposing their unlawful violations in the form of emails withing (*sic*) the green folders during the Employee Meeting on June 24, 2019." (ECF 37-1 at 5). The Secretary moves for summary judgment on this allegation because Marshall "has not provided any evidence of retaliation she allegedly incurred for producing these folders." (ECF 81 at 54). Marshall presented no response and no competent summary judgment evidence identifying how she was retaliated against based on distribution of the green folders at the employee meeting. (*See generally* ECF 84, 87). The undersigned, therefore, finds Marshall's unspecified claims related to her distribution of the green folders fail.

1.  *Marshall failed to establish a prima facie case.*

Marshall has not established that the write-ups in June 2019, an email reminder of the prohibition of heating devices sent in August 2019, or accusations of morphine diversion in January 2020 constituted an adverse employment action, such that a reasonable worker would have been dissuaded from making or supporting a charge of discrimination. *Burlington*, 548 U.S. at 68.

---

[8] Marshall's Amended Complaint also alleges she was subject to 'retaliation' related to management's refusal to investigate the tramadol medication diversion incident and the VA Police investigation related to her Facebook post. However, in reliance on statements made by Marshall in her deposition, the Secretary has addressed these as part of Marshall's harassment claims, rather than retaliation. (*See* ECF 37-1 at 3, 7); ECF 81 at 52, 54; ECF 82 at 32–33, 45–46). Marshall does not dispute this mischaracterization. (*See generally* ECF 84, 87).

Further, Marshall has not established a question of material fact as to causation. *McCoy*, 492 F.3d at 556–57.

While Marshall received five write-ups four days after initiating contact with an EEO counselor, "which *could* lead to termination," she was not terminated at this time. (ECF 84 at 28 (emphasis added); *see also* ECF 82 at 24–26). Three of the five write-ups initially received by Marshall were later placed in her employment file, but Marshall has not alleged any further action was taken. Marshall has not established she was subject to any change in her job duties, compensation or benefits. *See Butler*, 111 F. App'x at 235; *see also Noack v. YMCA*, 418 F. App'x 347, 353 (5th Cir. 2011) (holding no harm found where employee received written reprimand, but job title, duties, and pay remained the same); *Thibodeaux-Woody v. Houston Cmty. Coll*., 593 F. App'x 280, 286 (5th Cir. 2014) (finding that "a written reprimand, without evidence of consequences, does not constitute an adverse employment action").

Likewise, Marshall has not demonstrated a causal connection between the EEO claim and the write-ups. Marshall notes, without evidence in support, that she had not received any prior reprimands or unsatisfactory reviews until four days after she filed an EEO complaint. (ECF 84 at 28). Although temporal proximity may factor into a retaliation claim, a plaintiff must show more than suspicious timing to create a genuine issue of material fact. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655-56 (5th Cir. 2004) (holding that when a company-wide reduction in force took place, and plaintiff's only evidence of a causal connection was that such reduction took place after plaintiff's discrimination complaints, summary judgment in favor of the employer was proper). Here, Marshall has not presented more than suspicious timing related to the write-ups.

Additionally, Marshall has not demonstrated how receipt of an email from the VA Safety Officer stating that she could no longer use her heating pad and portable heater without reprimand

rises to the level of an adverse employment action. (ECF 37-1 at 4; ECF 84 at 28–29). The email was sent to a large number of employees on August 20, 2019 and contains a general reminder of the prohibition on the use of heating devices. (ECF 82-1 at 46). Marshall has not established how this email rises to the level of an adverse employment action. Even if such action could constitute an adverse employment action, Marshall has not demonstrated "a conflict in substantial evidence" that "but for" her EEO complaint, Marshall would still have been able to use her space heater and heating pad. *Feist*, 730 F.3d at 454. Marshall does not demonstrate that the VA Safety Officer knew of her EEO complaint when sending the email reminder. *Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 883 n.6 (5th Cir. 2003) ("Although the plaintiff's burden at the prima facie stage is not onerous, the plaintiff must produce at least some evidence that the decisionmakers had knowledge of his protected activity.").

Lastly, Marshall fails to demonstrate how the investigation of the alleged morphine diversion in January 2020 constituted an adverse employment action. Marshall testified that April Jones accused her of leaving two syringes of morphine unsupervised, that Marshall responded to the accusation via email, and "then nothing happened." (ECF 82 at 34–36; ECF 82-1 at 222–23). The Secretary, relying on the Declaration of Lisa Miller, does not dispute that "no further investigation was completed and Ms. Marshall was not penalized or otherwise punished for this incident." (ECF 82-1 at 91). At best, the morphine diversion allegation constituted a reprimand, but such conduct does not establish an adverse employment action for retaliation purposes. *Thibodeaux-Woody*, 593 F. App'x at 286 (finding that "a written reprimand, without evidence of consequences, does not constitute an adverse employment action"); *King*, 294 Fed. Appx. at 85–86 (finding that an unpleasant work meeting or verbal reprimand does not establish an adverse employment action for retaliation purposes). Further, Marshall has not demonstrated a causal

22

connection between the September 2019 EEO claim and the January 2020 morphine diversion accusation. *See Roberson*, 373 F.3d at 655–56.

The record, therefore, does not establish that an adverse employment action was taken against Marshall as to any of the grounds for her retaliation claim. (*See supra* p. 18).

    *2. Marshall failed to establish pretext.*

Even assuming *arguendo* that Marshall did make a prima facie showing of an adverse employment action, the Secretary has legitimate, nondiscriminatory, and nonretaliatory reasons underlying his actions. *McCoy*, 492 F.3d at 557. Marshall does not deny the actions identified in the write-ups, including being marked AWOL on two shifts and improperly submitting overtime. (ECF 82 at 13–19, 21–23). The Secretary asserts that he had a legitimate business interest in investigating Marshall's actions. Marshall does not provide any argument or evidence that this proffered reason was pretextual. (*See generally* ECF 84, 87).

The email from the safety officer purports to remind employees that "[h]eating pads and heating blankets" are "forbidden by Joint Commission, OSHA, National Fire Protection Act, and VHA and Local directive." (ECF 82-1 at 46–47). The facility safety officer informed Marshall similar reminders are sent regularly and that the email in question was sent to "ALL Service Leadership and ALL Supervisors to share with ALL staff, not just nurses." (ECF 82-1 at 39–40). The facility safety officer also informed Marshall that prohibition is due to blowing circuits, fire risk, and infection control. (*Id*.). Marshall asserts that the space heater and heating pad were "permitted under reasonable accommodations in the VA Reasonable Accommodations Handbook," and that her devices had been "tag[ged] for safe use on the unit." (ECF 84 at 29). Even if true, Marshall does not provide any evidence linking the safety officer's email to her EEO complaint. (*See id*.); *see Manning*, 332 F.3d 883, n.6.

Lastly, the Secretary claims that Marshall's history of failing to properly secure controlled medication was a legitimate reason to investigate the morphine diversion accusation. (ECF 81 at 59). Marshall's Response and Surreply do not address this argument or provide competent summary judgment evidence that the true motive was retaliation. (*See generally* ECF 84, 87).

Marshall failed to rebut the nonretaliatory reasons produced by the Secretary. In order to demonstrate pretext, the plaintiff must show "both that the reason was false, and that discrimination was the real reason." *Walton*, 119 F.3d at 370. Marshall's summary judgment evidence is insufficient to support a claim for retaliation. The record simply does not support an inference that any of the Secretary's actions were taken in retaliation for Marshall's protected activity, and Marshall failed to establish pretext. Thus, the undersigned recommends that the Secretary is entitled to summary judgment on the retaliation claim.

### E.  Marshall failed to demonstrate she was denied reasonable accommodations.

The undersigned finds that summary judgment should also be granted as to Marshall's disability discrimination claims because there is no genuine issue of material fact to show that the Secretary failed to reasonably accommodate Marshall.

The provisions of the ADA, prohibiting discrimination against a qualified individual on the basis of a disability, are made applicable to federal employees through the Rehabilitation Act. 29 U.S.C. §§ 794(a); *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010).  Discrimination includes failure to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . ., unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 29 USC § 12112(b)(5)(A). To establish a failure to accommodate claim, the plaintiff must show: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential

limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (internal quotations omitted).

"An employee who needs an accommodation . . . has the responsibility of informing her employer." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016). "Once an accommodation is requested, an employer must engage in the interactive process, or a flexible dialogue, with the employee with the goal of finding an appropriate accommodation for the limitation." *Id.* (internal quotations omitted). "An employer that fails to engage in the interactive process in good faith violates the ADA." *Delaval*, 824 F.3d at 481. However, if the breakdown in the interactive process is "traceable to the employee," then there is no violation on the employer's part. *Id.* (citing *Griffin*, 661 F.3d at 224).

Marshall asserts that she is disabled on account of fibromyalgia, adrenal insufficiency, and chronic fatigue. (ECF 37-1 at 4). Marshall alleges she was denied accommodations of an ergonomic chair and an easier access disability parking space. (*Id.*). The Secretary does not contest that Marshall is a qualified individual with a disability or that the VA knew of the resulting limitations; thus, the undersigned assumes without deciding that Marshall has proved the first two elements of her failure to accommodate claim. The Secretary disputes only whether the VA failed to accommodate Marshall. (ECF 81 at 47–51).

The Secretary argues that he did not fail to make a reasonable accommodation because Marshall caused the breakdown in the interactive process by withdrawing her first request. (*Id.*; ECF 85 at 6–7). The Secretary presents evidence that Marshall refused to accept the temporary accommodation offered and refused to engage in the reasonable accommodation process. (ECF 82 at 53, 55–56, 230; ECF 82-1 at, 48–49, 226, 237–41.) Marshall's Response provides no evidence

to show otherwise. (*See* ECF 84 at 24–27). In fact, Marshall's Response confirms that Marshall "refused [the temporary] accommodation during her two separate phone conversations with the Nurse Manager then the [Local Reasonable Accommodation Coordinator]." (ECF 84 at 25). Marshall states that she "refused their assistance, because it was not reasonable," and chose to not attend a meeting with the reasonable accommodations coordinator. (*Id*. at 26). Marshall does not raise further argument on this cause of action in her Surreply. (ECF 87).

The undersigned finds that Marshall caused a breakdown in the interactive process with the Secretary and recommends that the Secretary is entitled to summary judgment on Marshall's failure to accommodate claims. [9]

## I.    <u>RECOMMENDATION</u>

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that Defendant's Second Motion for Summary Judgment (ECF 82) be GRANTED.

## II.    <u>INSTRUCTIONS FOR SERVICE</u>

The United States District Clerk is directed to send a copy of this Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED November 18, 2022.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

---

[9] In his Motion, the Secretary also discusses a second accommodation request filed by Marshall. (ECF 81 at 50–51). By her Response, Marshall indicates that the second request is not before the Court. (ECF 84 at 26–27). If such a claim could be construed as raised by Marshall, the claim has been abandoned and the Secretary is entitled to summary judgment.

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), as recognized in *ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).